## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### JACKSONVILLE DIVISION

**ARTHUR BROWN individually and on behalf of all others similarly situated,**

*Plaintiff,*

v.

**TESLA, INC.**

*Defendant.*

Case No.:_____

**JURY TRIAL DEMANDED**

---

### CLASS ACTION COMPLAINT

---

Plaintiff Arthur Brown ("Plaintiff") brings this Class Action Complaint against Defendant Tesla Inc., ("Tesla" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

### PARTIES, JURISDICTION & VENUE

1.     Plaintiff Arthur Brown is a resident citizen of Jacksonville, Florida. Jacksonville is located within Duval County, Florida. At all relevant

times, Plaintiff is the purchaser and owner of a Tesla Powerwall 2 Battery System.

2.      Tesla Inc. ("Tesla") is a Delaware Corporation with global offices located within the United States, North America, Europe and elsewhere. Tesla has approximately 30 stores/centers located in Florida.

3.      Tesla's Headquarters are located at 1 Tesla Road, Austin, Texas 78725.  Tesla's Registered Agent for Service of Process in Delaware is Business Filings Incorporated, 108 West 13th Street, Wilmington, Delaware 19801.

4.      Tesla is the designer and manufacturer of the Powerwall 2 Battery System.

5.      The Powerwall 2 Battery System is purportedly a wall-mounted, rechargeable lithium-ion home battery system designed to store 13.5 kWh of usable energy and integrate directly with a home's electrical panel to provide solar self-consumption and backup power during grid outages.

6.      It is managed through Tesla's app and cloud controls, and it automatically charges and discharges based on programmed settings and grid conditions so homeowners can keep lights and critical loads running when the grid fails and use stored energy to reduce utility bills during peak-rate periods.

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or

value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

8.    There is minimal diversity as required by CAFA. Plaintiff is a natural person and citizen of Florida. Tesla, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Texas and is therefore a citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332(c).

9.    This Court has personal jurisdiction over Defendant because it has also purposefully availed itself of the laws, rights, and benefits of the State of Florida. Tesla regularly markets its products to Floridians and has approximately 30 product centers within the state.

10.    This Court has supplemental jurisdiction over all state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the claims within the Court's original jurisdiction, arising from a common nucleus of operative fact concerning Tesla's design, marketing, sale, recall, and warranty handling of Powerwall 2 systems.

11.    Venue is proper under 28 U.S.C §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

**FACTUAL ALLEGATIONS**

12.    Defendant Tesla, Inc. ("Tesla") is a multinational technology and energy company that designs, manufactures, markets, sells, and services consumer energy products, including the Tesla Powerwall 2 AC battery system ("Powerwall 2"), throughout the United States and in the State of Florida.

13.    Tesla markets its Powerwall 2 directly to consumers and sells to them through a network of authorized installers.

14.    Tesla targets homeowners and small businesses through its website, online advertising, marketing materials, and in-person sales channels, and derives substantial revenue from the sale and installation of Powerwall 2 units across the country and within Florida.

15.    Powerwall 2 is marketed as a fully integrated residential energy storage system that provides solar self-consumption, time-based control, and whole-home or partial-home backup power. Tesla touts Powerwall 2 as a safe, reliable source of "clean power" that allows consumers to maintain electricity for critical loads and reduce their dependence on the grid.

16.    Tesla's marketing, specifications, and sales materials represent that Powerwall 2 is suitable for ordinary residential use, is safe for installation in or on homes and garages and will provide dependable backup power and energy storage over many years. Tesla emphasizes that consumers can rely on Powerwall 2 during grid outages and other emergencies.

17.    Tesla backs Powerwall 2 with a written limited warranty ("Limited Warranty"), which provides, among other things, that each Powerwall 2 will be free from defects in materials and workmanship for ten (10) years from initial installation, and that the unit will deliver a specified amount of usable energy and minimum capacity over that period under normal use.

18.    Tesla's Limited Warranty is a uniform, standardized form drafted exclusively by Tesla, presented to consumers on a take-it-or-leave-it basis, and not negotiable. Purchasers of Powerwall 2, including Plaintiff and members of the Nationwide Class and Florida Subclass, have no ability to negotiate different warranty terms.

19.    The Limited Warranty purports to limit consumers' remedies to repair, replacement with an "equivalent" product, or a refund based on the then-current price of an equivalent product, at Tesla's election. It also purports to disclaim or limit implied warranties, to cap Tesla's liability, and to exclude consequential, incidental, and other categories of damages.

20.    Tesla includes in or with the Limited Warranty a boilerplate arbitration and class-action waiver clause that requires individual arbitration before the American Arbitration Association and purports to prohibit any relief that would benefit anyone other than the individual claimant. Consumers are not required to sign any separate arbitration agreement, and Tesla does not

explain the material terms of this provision to ordinary purchasers at the point of sale.

21.     After Powerwall 2 units had been sold and installed across the United States, Tesla discovered that a significant population of Powerwall 2 systems contained lithium-ion battery cells and/or associated components that could fail in a way that causes the battery to overheat, stop functioning, emit smoke, or catch fire under normal operating conditions.

22.     Tesla identified a pattern of incidents in which Powerwall 2 units overheated and/or emitted smoke or flames, causing property damage and creating serious fire and burn hazards to consumers and their homes. Tesla's internal data and analysis confirmed that the defect was systemic and affected thousands of units sold nationwide.

23.     Tesla subsequently initiated a safety recall of affected Powerwall 2 units in the United States (the "Recall"). The Recall encompasses thousands of Powerwall 2 systems sold between approximately 2020 and 2022, including units purchased and installed by Plaintiff and members of the Nationwide Class and Florida Subclasses.

24.     According to the CPSC, 10,500 units are subject to recall. The estimated cost for the Powerwall itself, per the same CPSC report, is approximately $8,000.

25.    In connection with the Recall, Tesla has acknowledged that affected Powerwall 2 systems pose a risk of overheating, smoking, and fire. Tesla has further acknowledged that the defect can manifest during normal use and that remedial action is required to mitigate the risk of serious injury, death, and property damage.

26.    Rather than immediately providing full refunds or prompt replacement with non-defective units, Tesla has remotely accessed affected Powerwall 2 systems and discharged or limited their battery charge to near-zero levels to reduce the risk of overheating. As a result, many owners have been deprived of the core functions for which they purchased Powerwall 2, including backup power and energy storage.

27.    Tesla's Recall "remedy" consists primarily of inspection and eventual replacement of affected Powerwall 2 units with replacement units or components. In practice, however, this process has been slow, burdensome, and incomplete. Many consumers have experienced lengthy periods in which their Powerwall 2 units are partially or fully disabled or are not available for ordinary use.

28.    Tesla has not offered consumers full refunds of the purchase price and has not offered to reimburse consumers for the loss of use of their Powerwall 2 systems during the Recall period, the cost of alternative backup

solutions, the time and inconvenience of dealing with the Recall, or other incidental and consequential losses.

29.    Plaintiff's Powerwall 2 unit is subject to the Recall. Tesla has, at various times, remotely reduced or disabled Plaintiff's ability to charge and discharge the unit to mitigate the risk of overheating and fire. As a result, Plaintiff has been deprived of the backup power and energy-management benefits for which Plaintiff paid.

30.    Tesla's Recall and remedial measures confirm that the Powerwall 2 units subject to the Recall were defective and not of merchantable quality at the time of sale and installation. A home energy storage system that must be recalled and remotely "bricked," partially or completely, to prevent overheating and fire is not fit for its ordinary purpose as a safe and reliable residential battery.

31.    At the moment of purchase, Plaintiff and Class members received products worth less than the price they paid because the Powerwall 2 units were defective, unsafe, and subject to recall and remote disablement. The defect existed from the outset and was not caused by misuse, improper installation, or extraordinary conditions.

32.    Plaintiff and Class members therefore suffered concrete economic injury, including but not limited to: (a) overpayment or a "price premium" attributable to Tesla's misrepresentations and omissions; (b) diminished value

of their Powerwall 2 units; (c) loss of use of their Powerwall 2 systems during the Recall and while units are disabled or restricted; and (d) time, inconvenience, and out-of-pocket costs associated with dealing with the Recall and its consequences.

33.    These economic injuries constitute injury in fact and loss of money or property sufficient to confer Article III standing and statutory standing under California's consumer-protection statutes. They are not speculative, hypothetical, or contingent, and they were caused by Tesla's conduct.

34.    Tesla's Recall and offer to inspect and replace affected units do not fully compensate Plaintiff and Class members for their economic injuries and do not restore them to the positions they would have occupied had Tesla disclosed the defect before purchase. Even if Tesla ultimately replaces a defective unit, the replacement does not erase the price premium paid at the time of sale, the period of loss of use, the associated costs, or the fact that consumers purchased a defective product in the first place. Additionally, the "new" replacement does not come with a "new" 10 year warranty.

35.    Tesla's Recall remedy is also incomplete because it does not provide full restitution of the purchase price, does not compensate for loss of use and incidental damages, and does not provide any additional warranty or assurance that replacement units are free from similar defects. The existence

of the Recall therefore does not moot or eliminate Plaintiff's and Class members' claims or requested relief.

36.    Plaintiff continues to own and use a Powerwall 2 system and remains subject to Tesla's ongoing recall, warranty, and software-control practices. Despite the Recall, Tesla now continues to market a newer version of the Powerwall- Powerwall 3.

37.    Absent court intervention, Tesla is likely to continue engaging in the unfair, unlawful, and deceptive practices alleged in this Complaint, including misrepresenting the safety and reliability of its Powerwall Battery Systems, failing to fully and promptly compensate consumers for defects and recall-related harm, and relying on contractual limitations and arbitration provisions to shield itself from accountability.

38.    Plaintiff reasonably anticipates ongoing interactions with Tesla regarding Plaintiff's Powerwall 2 system, including Tesla's remote monitoring and control, software and firmware updates, and warranty and recall administration. Plaintiff would consider purchasing Tesla energy products in the future if Tesla's practices were brought into compliance with the law and if accurate information about product safety and reliability were provided.

39.    Tesla's wrongful conduct is ongoing and affects not only current owners of Powerwall 2 but also members of the public who may consider purchasing Powerwall 2 or similar Tesla products in the future. Prospective

purchasers are currently exposed to Tesla's marketing and omission of material facts regarding the defect and Recall.

40.    Plaintiff therefore seeks forward-looking injunctive relief that is directed primarily at protecting the public from Tesla's future misconduct, including orders requiring Tesla to make truthful, non-misleading disclosures about the safety, reliability, and recall history of Powerwall 2 and similar products, and to implement fair and adequate recall and warranty policies that fully address the economic harm caused by defects and recall-related loss of use.

41.    Tesla is subject to personal jurisdiction in this Court because it regularly transacts business in Florida, deliberately targets Florida consumers with its Powerwall marketing and sales efforts, maintains substantial operations, facilities, and/or employees in Florida, and derives substantial revenue from selling and installing Powerwall 2 units in this state.

**Plaintiff Brown's Experience**

42.    Plaintiff Brown purchased Tesla's Powerwall 2 along with approximately 24 solar panels within the applicable recall period.

43.    Plaintiff Brown believed, through Tesla's marketing, that investing this money into Tesla's Energy products would allow for substantial savings in the cost to provide energy for his consumption and provide him with the opportunity to "sell back" excess stored energy to the grid.

44.    Plaintiff Brown has not experienced the promised energy savings, nor has he generated any revenue from the excess energy storage.

45.    Plaintiff Brown owns two Tesla vehicles that he charges at his home.  When the Powerwall is working, the energy stored within the Powerwall can charge his vehicles.

46.    In November 2025, Plaintiff Brown advises he received a notification on his Tesla App. that his Powerwall is subject to recall.

47.    Prior to receiving the recall notification, Plaintiff Brown advises that Tesla remotely disengaged his Powerwall.

48.    This occurred long before Plaintiff Brown received his notification from Tesla.

49.    As of this filing, Tesla has not advised Plaintiff Brown when an authorized installer will be able to replace his Powerwall.

50.    Plaintiff Brown is now deprived of the use of his Powerwall 2.  As a result, he can no longer receive the benefits of storing energy and using it for private consumption as promised or provide a backup energy source in case of a power outage.  This lack of stored energy requires him to utilize his regular electric output to charge his two Tesla automobiles at home.  Simply put, he now pays more in energy costs and is being deprived the benefit of his bargain.

51.    Complicating matters, Plaintiff Brown is attempting to sell his home. The perceived benefit of having a Powerwall and solar panels is negated by the recall and has lessened the resale value of his home.

52.    Plaintiff Brown has suffered injury in fact and has lost money or property as a result of Tesla's misconduct. Plaintiff paid money to purchase and install a Tesla Powerwall 2 that Plaintiff would not have purchased, or would have paid substantially less for, had Tesla truthfully disclosed the defect, overheating and fire risks, and limitations of its recall and warranty remedies. Plaintiff also lost the use and benefit of Powerwall 2 during periods in which Tesla instructed that it is not to be used and/or remotely discharged or disabled the unit, and incurred additional time, inconvenience, and related costs.

**Tesla's Recall Remedy is Inadequate**

53.    Tesla has remotely accessed affected Powerwall 2 systems and discharged or limited their charge level to near-zero to reduce the risk of overheating.

54.    Tesla advises it will inspect affected Powerwall 2 systems and, where necessary, replace units or components to address the overheating and fire risk.

55.    Even assuming Tesla ultimately replaces every affected Powerwall 2-unit, Tesla's Recall and limited warranty remedies are incomplete and do not

restore Plaintiff and Class members to the positions they would have occupied had Tesla fulfilled its obligations and disclosed all material facts at the time of sale.

56.     First, Tesla's remedy does not address overpayment and benefit-of-the-bargain damages. At the time of purchase and installation, Plaintiff and Class members paid thousands of dollars for a product that was defective, unsafe, and materially less valuable than represented. Even a replacement unit delivered months or years later does not retroactively extinguish the price premium paid for a defective product at the outset.

57.     Second, Tesla's remedy does not compensate for loss of use. By remotely discharging or disabling affected Powerwall 2 units and instructing owners not to use them, Tesla deprived consumers of the core functions for which they purchased Powerwall 2—backup power, solar self-consumption, and time-of-use energy management—for extended periods, along with the ability to resell excess energy back to the power grid. Tesla has not offered to reimburse consumers for this loss of use or for the cost of temporary or alternative backup solutions.

58.     Third, Tesla's remedy does not compensate for incidental and consequential damages, including but not limited to: increased energy bills, time and inconvenience in dealing with the Recall and service appointments; any out-of-pocket charges for electricians, permitting, or related work; and

14

costs incurred because backup power was unavailable during outages or emergencies. These harms flow directly from the defect and Recall but are excluded from Tesla's self-defined "remedy."

59.    Fourth, Tesla's limited repair-or-replace remedy has failed of its essential purpose. Under the Florida Uniform Commercial Code and analogous laws in other states, where a limited or exclusive remedy fails of its essential purpose, buyers may pursue the full range of remedies provided by the UCC, including consequential and incidental damages. The essential purpose of a limited remedy is to provide a prompt and meaningful fix that gives the buyer the goods as warranted. Here, Tesla sold a safety-critical home energy product that could overheat and pose fire and burn hazards, then remotely "bricked" or restricted the product for safety reasons and offered only delayed and incomplete replacement—without compensating for the resulting economic harms. That is not a remedy that gives consumers what they were promised.

60.    In addition, to the extent Tesla's Limited Warranty purports to disclaim implied warranties, cap damages, and exclude consequential and incidental damages in the context of a serious undisclosed safety defect in a consumer product, those limitations are invalid, unconscionable, or ineffective under Florida law and other applicable state laws.

61.    Tesla's Recall also does not moot Plaintiff's and Class Members' claims or render this case prudentially moot. Tesla has not voluntarily

provided complete relief—far from it. Plaintiff and Class Members continue to suffer uncompensated economic injury in the form of overpayment, diminished value, loss of use, and related harms. Tesla continues to retain the economic benefits of the transactions while providing only a partial, belated fix.

62.    For these reasons, Tesla's Limited Warranty and Recall remedies do not deprive Plaintiff or the Classes of standing, do not moot their claims for damages, restitution, declaratory relief, and injunctive relief, and do not bar them from seeking the full remedies available under Florida law, other state laws, and federal law.

## <u>CLASS ALLEGATIONS</u>

63.    Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

64.    The National Class that Plaintiff seeks to represent is defined as follows:

> **All persons in the United States who purchased one or more Tesla Powerwall 2 AC battery systems that are included in, or otherwise subject to, Tesla's safety recall of certain Powerwall 2 AC battery power systems for fire and burn hazards (the "Recall").**

65.    The Florida Subclass that Plaintiff seeks to represent is defined as follows:

16

**All members of the Nationwide Class who purchased and installed their recalled Powerwall 2 AC battery system in the State of Florida.**

66.   Excluded from the Class and Subclass are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

67.   Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

68.   <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. While the exact number of Class Members is unknown to Plaintiffs at this time, such number is exclusively in the possession of Defendant.  Currently, it is estimated that the size of the class will approximate 10.500 individuals.

69.   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that

17

predominate over questions which may affect individual Class Members, includes the following:

a. Whether Powerwall 2 units subject to the Recall contain one or more defects that can cause the units to overheat, stop functioning, emit smoke or flame, and pose fire and burn hazards under normal use;

b. Whether, at the time of sale and installation, the recalled Powerwall 2 units were defective, unsafe, or not of merchantable quality;

c. Whether Tesla knew or should have known of the defect and associated risks, and if so, when;

d. Whether Tesla failed to disclose, concealed, or misrepresented material facts about the safety, reliability, and performance of Powerwall 2 in its marketing, advertising, and sales materials;

e. Whether Tesla's written and oral representations about Powerwall 2's safety, reliability, backup capabilities, and long-term performance were false, misleading, or likely to deceive reasonable consumers;

f. Whether Tesla's conduct breached express warranties and implied warranties owed to Plaintiff and Class members;

g. Whether Tesla's Limited Warranty remedy of repair, replacement, or limited refund has failed of its essential purpose in light of the defect and Recall;

h. Whether Tesla's attempted warranty disclaimers, remedy limitations, and damage exclusions are ineffective, unconscionable, or otherwise unenforceable;

i. Whether Tesla has been unjustly enriched at the expense of Plaintiff and Class members;

j. Whether Tesla's conduct violates Florida's Deceptive and Unfair Trade Practices Act with respect to the Florida Subclass;

k. Whether Plaintiff and Class members paid a price premium or otherwise suffered economic harm, including overpayment, diminished value, and loss of use, as a result of Tesla's conduct;

l. Whether Tesla's Recall and remedial measures fully compensate Plaintiff and Class members, or render their claims moot or prudentially moot;

m. Whether Plaintiff and Class members are entitled to damages, restitution, disgorgement, and other monetary relief; and

n. Whether Plaintiff and the Florida Subclass are entitled to declaratory and public injunctive relief to stop Tesla's ongoing unfair, unlawful, and deceptive practices and to require changes to Tesla's marketing, warranty, and recall practices.

70. These common questions are capable of class wide resolution. Their truth or falsity can be determined based on common evidence, including Tesla's design, testing, and incident data; internal communications; marketing and warranty documents; and Recall records.

71. <u>Typicality</u>: Plaintiffs' claims are typical of those of the other members of the Class because Plaintiffs, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

72. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect

to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

73. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights, and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

74. <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to

litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

75.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

76.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

77.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

78.     Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

79.     Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

## CAUSES OF ACTION

### COUNT 1

### Breach of An Express Warranty

80.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81.     The Powerwall 2 is a "good" within the meaning of Article 2 of the Florida Uniform Commercial Code ("UCC"), Fla. Stat. § 672.105, and similar UCC provisions adopted by other states in which Nationwide Class members purchased their Powerwall 2 systems.

82.     Tesla is a "seller" and "merchant" with respect to Powerwall 2 under Fla. Stat. § 672.103 and § 672.104, and under the substantially similar laws of other states, because it designs, manufactures, markets, sells, and warrants Powerwall 2 systems for residential use.

83.    Tesla provided a written **"Tesla Powerwall 2 AC Limited Warranty (USA)"** for Powerwall 2 units sold in the United States. This written Limited Warranty constitutes an express warranty under Fla. Stat. § 672.313(1)(a)–(b) and analogous provisions of other states' UCCs.

84.    In its written Limited Warranty and uniform marketing materials, Tesla expressly warranted, among other things, that:

a. Each Powerwall 2 "will be free from defects" in materials and workmanship for ten (10) years following the initial installation date;

b. Powerwall 2 is a safe, reliable, integrated home-energy storage and backup power system suitable for residential use under normal operating conditions.

85.    Under Fla. Stat. § 672.313(1)(a)–(b), any affirmation of fact, promise, or description of the goods that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to that affirmation or description.

86.    Tesla's written Limited Warranty, technical datasheets, website representations, and marketing materials—including the promises regarding defect-free operation, energy capacity, long-term performance, and safe, reliable backup power—were affirmations of fact and descriptions that became part of the basis of the bargain for Plaintiff and Class members. They

23

purchased Powerwall 2 in reasonable reliance on these uniform warranties and representations.

87.    At the time of sale and installation, the Powerwall 2 units later included in Tesla's nationwide safety recall were not free from defects for ten years and did not conform to Tesla's express promises. Instead, they contained a latent design and/or manufacturing defect in the lithium-ion cells and/or related systems that, during normal use, can cause the units to overheat, stop functioning, emit smoke or flame, and pose serious fire and burn hazards, as confirmed by the U.S. Consumer Product Safety Commission recall notice.

88.    Tesla's recall and its own stated remedy of "Replace" for affected Powerwall 2 units acknowledge that these units do not conform to Tesla's written warranties and are defective under normal operating conditions.

89.    Further, Tesla has remotely discharged or disabled affected Powerwall 2 systems to mitigate overheating and fire risk, thereby depriving Plaintiff and Class members of the core energy-storage and backup-power functions that were expressly warranted for the ten-year term and compounding the nonconformity of the goods with Tesla's promises.

90.    Tesla has breached its express warranties in at least two independent ways:

a. **Product nonconformity at sale:** The recalled Powerwall 2 units were defective at the time of sale and installation and

therefore did not conform to the express promises that they would be defect-free, safe, and capable of providing specified capacity and long-term backup-power performance under normal use; and

b. **Failure to comply with warranty obligations:** Tesla failed to perform its own Limited Warranty obligations by not promptly repairing or replacing the defective Powerwall 2 units with non-defective units, and by failing to provide a refund or other remedy that fully restores the benefit of the bargain and compensates consumers for their loss of use and other economic harms.

91.    Tesla's Limited Warranty purports to limit the buyer's remedy to repair, replacement, or a limited refund. Even if such remedy limitations are otherwise enforceable, they are subject to Fla. Stat. § 672.719. Under § 672.719(2), "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code."

92.    Tesla's limited remedy has failed of its essential purpose within the meaning of Fla. Stat. § 672.719(2) and similar provisions in other states because, among other reasons:

a. Tesla has not provided prompt, effective replacement of defective units, leaving consumers for extended periods with recalled, remotely-discharged, or partially disabled systems that do not perform as warranted;

b. The Recall remedy does not restore the promised safety, capacity, and backup-power functionality during the period between recall notice and replacement, nor does it compensate consumers for that substantial loss of use; and

c. The limited remedy does not compensate for overpayment and diminished value at the time of sale—i.e., the difference between the value of Powerwall 2 as warranted and the value of Powerwall 2 as defective and subject to a serious safety recall.

93.    Plaintiff and Class members accepted their Powerwall 2 systems and, within a reasonable time after discovering the defects and recall, provided Tesla with notice of the breach, including through warranty claims, recall registration and communications, service requests, and direct contacts with Tesla's customer support, thereby satisfying Fla. Stat. § 672.607(3)(a).

94.    Under Fla. Stat. § 672.714(1)–(2), where the buyer has accepted goods and given notification, the measure of damages for breach of warranty is the loss resulting from the seller's breach, typically the difference between the value of the goods as accepted and the value they would have had if they had been as warranted, plus any appropriate incidental and consequential damages under Fla. Stat. § 672.715.

95.    As a direct and proximate result of Tesla's breaches of express warranty, Plaintiff and the Nationwide Class (including the Florida Subclass)

have suffered damages in an amount to be proven at trial, including but not limited to:

a. **Overpayment / price-premium damages**—the difference between the price paid for Powerwall 2 as represented (safe, defect-free, reliable home energy storage and backup for ten years) and the lower value of Powerwall 2 as actually delivered (defective, subject to overheating and fire risk, recalled, and remotely discharged or disabled);

b. **Diminished value** of their Powerwall 2 systems and associated home-energy setups due to the latent defect and Recall;

c. **Loss of use** of Powerwall 2 during periods when Tesla has instructed owners not to use the system and/or has remotely discharged or disabled it, depriving them of the backup-power and energy-management functions for which they paid; and

d. **Incidental and consequential damages**, including increased energy costs, costs associated with recall compliance, dealing with Tesla and installers, substitute backup-power arrangements, and other reasonably foreseeable losses arising from Tesla's breach.

96.     Plaintiff and Class members seek all damages and other relief available for breach of express warranty under Florida law and the substantially similar UCC provisions of other states, including damages under

Fla. Stat. §§ 672.714–672.715, plus pre- and post-judgment interest, costs, and any other relief the Court deems just and proper.

## COUNT 2

### Breach of An Implied Warranty of Merchantability

97.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98.    Tesla designs, manufactures, markets, sells, and warrants Tesla Powerwall 2 AC battery systems ("Powerwall 2") for residential use in Florida and throughout the United States. Tesla is a "merchant" with respect to goods of this kind under Fla. Stat. § 672.104(1) and the substantially similar provisions of other states' Uniform Commercial Codes.

99.    Powerwall 2 is a "good" within the meaning of Article 2 of the Florida UCC, Fla. Stat. § 672.105(1), and equivalent statutes in other states. It is a tangible product sold for installation and use in homes and small businesses and is used primarily for personal, family, or household purposes.

100.    Under Fla. Stat. § 672.314(1), "[u]nless excluded or modified (s. 672.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Similar implied warranties of merchantability arise under the UCC provisions adopted in other states where Nationwide Class members purchased and installed Powerwall 2 systems.

101. To be merchantable, goods must, among other requirements, be "fit for the ordinary purposes for which such goods are used," be of fair or average quality within the description and conform to any promises or affirmations of fact made on the container or label. Fla. Stat. § 672.314(2);

102. Tesla sold Powerwall 2 units to Plaintiff and Class members for the ordinary purposes of residential energy storage, solar self-consumption, time-based control, and backup power during grid outages.

103. By operation of Fla. Stat. § 672.314 and comparable statutes in other states, Tesla impliedly warranted to Plaintiff and Class members that the Powerwall 2 units they purchased were merchantable—i.e., of fair or average quality within the description and fit for the ordinary purposes of safe and reliable residential energy storage and backup power.

104. The Powerwall 2 units that are subject to Tesla's safety recall were not of merchantable quality at the time of sale and installation, and did not remain merchantable thereafter, because, among other reasons:

> a. They contain a latent design and/or manufacturing defect in the lithium-ion cells and/or associated components that can cause the units, under normal and intended use, to overheat, stop functioning, emit smoke or flame, and pose serious fire and burn hazards.

b. In response to this defect, Tesla has remotely discharged or disabled affected Powerwall 2 systems as an interim safety measure, thereby depriving owners of the core backup-power and energy-storage functions for which they purchased the product.

c. A recalled, potentially dangerous, remotely discharged, or disabled home battery system is not fit for its ordinary purpose as a safe, reliable residential energy-storage and backup-power product.

105. As a result of the defect and Recall, the recalled Powerwall 2 units failed to conform to Tesla's own descriptions and promises regarding safety and reliability.

106. To the extent Tesla's Limited Warranty purports to disclaim or limit the implied warranty of merchantability, any such disclaimer or limitation is ineffective, invalid, or unconscionable under Fla. Stat. § 672.316 and comparable statutes in other states because, among other things:

a. Any purported disclaimer is not conspicuous and does not clearly mention "merchantability" as required to exclude or modify the implied warranty of merchantability in a written contract; and

b. In the context of an undisclosed, serious safety defect in a consumer product that presents overheating and fire risks and results in a nationwide recall and remote disablement of the product, enforcing a

blanket disclaimer or severe limitation on implied warranties would be unconscionable and contrary to the purposes of the UCC.

107.   In addition, any attempt by Tesla to rely on a limited repair-or-replace remedy to cabin or extinguish implied-warranty liability is constrained by Fla. Stat. § 672.719(2) and analogous provisions in other states, under which an exclusive or limited remedy that fails of its essential purpose does not preclude buyers from pursuing the full range of UCC remedies. Given the nature of the defect, the safety risks, the remote disablement of units, and the incomplete compensation for overpayment and loss of use, Tesla's limited remedy has failed of its essential purpose.

108.   At all relevant times, Plaintiff and Class members used their Powerwall 2 systems in a normal, intended manner. The defects and resulting failures were not caused by abnormal use, misuse, improper installation by Plaintiff, or any other misuse or alteration by the Class.

109.   As a direct and proximate result of Tesla's breaches of the implied warranty of merchantability, Plaintiff and Class members have suffered damages, including but not limited to:

   a. **Overpayment / price-premium damages**, measured by the difference between the value of Powerwall 2 as warranted (safe, defect-free, reliable home energy storage and backup) and the value of Powerwall 2 as actually delivered (defective, subject to

overheating and fire risk, recalled, and remotely discharged or disabled);

b. **Diminished value** of their homes' energy systems and associated equipment due to the defective and recalled Powerwall 2 units;

c. **Loss of use** of Powerwall 2 during periods when Tesla instructed owners not to use the system and/or remotely discharged or disabled it, depriving them of backup-power and energy-management functions; and

d. **Incidental and consequential losses** reasonably resulting from the breach, including increased energy costs, costs associated with recall compliance, communications with Tesla and installers, and substitute backup-power arrangements, as permitted by Fla. Stat. § 672.715 and analogous provisions in other states.

110.    Plaintiff and Class members seek all damages and other relief available for breach of implied warranty of merchantability under Florida law and the substantially similar UCC provisions of other states, including damages under Fla. Stat. §§ 672.714–672.715, pre- and post-judgment interest, costs, and any other relief the Court deems just and proper.

## COUNT 3

## Unjust Enrichment

111.  Plaintiff realleges and incorporates by reference the preceding factual allegations to the extent they are consistent with, and do not allege the existence of a valid and enforceable contract governing the subject matter of this claim and otherwise pleads this claim in the alternative to his contract and warranty claims.

112.  This is a claim for unjust enrichment under Florida law on behalf of Plaintiff and the Florida Subclass, and under the materially similar unjust-enrichment and restitution laws of the other states in which Nationwide Class members purchased Powerwall 2 systems.

113.  Plaintiff and Class members directly conferred substantial monetary benefits on Tesla by paying Tesla (and/or Tesla-authorized installers acting as Tesla's agents) the purchase price and related amounts for Tesla Powerwall 2 systems and associated hardware and services. Tesla received these funds, recorded them as revenue, and used them to fund its operations and profits.

114.  Plaintiff and Class members also conferred a further benefit on Tesla by connecting their Powerwall 2 systems to Tesla's cloud and monitoring platforms as required, allowing Tesla to collect valuable usage, performance, and customer data that Tesla exploited to refine its products, services, and business practices.

115.   Tesla accepted and retained these monetary and data benefits with full knowledge of the facts, including that:

a. The recalled Powerwall 2 units contained a latent defect in lithium-ion cells and/or associated components that can cause overheating, loss of function, smoke, or fire under normal use; and

b. Tesla's subsequent Recall and remote-discharge measures would deprive owners of the core backup-power and energy-storage functions for which they paid.

116.   Tesla has retained the purchase payments and other benefits without providing a commensurate, non-defective, merchantable product, and without fully compensating Plaintiff and Class members for the price premium / overpayment they made at the time of sale for what they reasonably believed to be safe, defect-free, long-term home energy storage and backup;

117.   Tesla's Recall and limited warranty "repair/replace" remedy do not return to Plaintiff and Class members the full value of the benefits they conferred. Tesla has not refunded the full purchase price and has not disgorged the profits derived from selling defective Powerwall 2 units.

118.   Under these circumstances, it would be inequitable for Tesla to retain the monetary and data benefits it received from Plaintiff and Class

members without making full restitution, given that Tesla sold defective, recalled, and remotely disabled products and has not provided a complete remedy for the resulting economic harm.

119.   Florida law recognizes unjust enrichment as an equitable, quasi-contract theory that applies where there is no adequate remedy at law and no enforceable contract governing the entire subject matter of the dispute. While Plaintiff has asserted contract and warranty claims, he pleads unjust enrichment in the alternative as permitted by Rule 8(d), to the extent Tesla disputes the existence, validity, scope, or enforceability of any contract or warranty.

120.   Plaintiff and Class members seek restitution and disgorgement of all amounts by which Tesla has been unjustly enriched at their expense.

## COUNT 4

**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") – Fla. Stat. §§ 501.201 et seq.**
**(On Behalf of the Florida Subclass)**

121.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

122.   This Count is brought on behalf of the Florida Subclass pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213.

123.  At all relevant times, Tesla was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8), by designing, manufacturing, marketing, advertising, selling, and servicing Tesla Powerwall 2 AC battery systems to consumers in Florida for personal, family, or household use.

124.  Plaintiff and Florida Subclass members are "consumers" within the meaning of FDUTPA, Fla. Stat. § 501.203(7), in that they are individuals who purchased goods or services, including Powerwall 2, primarily for personal, family, or household purposes.

125.  Tesla engaged in deceptive acts or practices in violation of FDUTPA by, among other things:

a. Representing, through uniform marketing, advertising, and sales materials, that Powerwall 2 is a safe, reliable, and suitable home energy storage and backup power system for residential use;

b. Representing that Powerwall 2 will provide long-term backup power and energy storage and that consumers will realize the benefits of dependable, "clean" power from the system; and

c. Issuing a written warranty that Powerwall 2 will be free from defects for a specified period and will deliver certain performance and capacity levels under normal use.

126.  These representations were likely to mislead—and did mislead—reasonable consumers acting under the circumstances, including Plaintiff and

Florida Subclass members, by conveying that Powerwall 2 was safe, free of latent defects that could cause overheating or fire, and suitable to provide reliable backup power for many years.

127. Tesla's representations were deceptive and misleading because Powerwall 2 units subject to the Recall contained one or more latent defects in their lithium-ion cells and/or associated components that, under normal and intended use, can cause the units to overheat, stop functioning, emit smoke or flame, and create serious fire and burn hazards, and because Tesla has remotely discharged or disabled affected units to mitigate those risks.

128. Tesla also engaged in unfair acts or practices in violation of FDUTPA. Tesla's conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, including by:

a. Selling a high-priced, safety-critical home energy product that was defective and dangerous at the time of sale;

b. Failing to timely and adequately disclose the defect and associated risks to Florida consumers;

c. Remotely discharging or disabling affected Powerwall 2 units, thereby depriving consumers of the core backup-power and energy-storage functions for which they paid; and

d. Implementing a Recall and limited warranty remedy that does not fully compensate consumers for the economic harm they suffered, including overpayment, diminished value, loss of use, and associated costs and burdens.

129. Tesla knew or, in the exercise of reasonable care, should have known of the defect and associated overheating and fire risks before and during the period in which it marketed and sold Powerwall 2 to Plaintiff and Florida Subclass members, and knew or should have known that its advertising and warranty statements were false, misleading, and incomplete.

130. Tesla's deceptive and unfair acts and practices occurred uniformly, were directed at the consuming public in Florida, and were a regular part of Tesla's business practices regarding Powerwall 2.

131. Plaintiff and Florida Subclass members were exposed to Tesla's deceptive and unfair representations and omissions, including through Tesla's website, marketing materials, and communications with Tesla or its authorized installers. Plaintiff and Florida Subclass members reasonably relied on Tesla's marketing and warranty representations as part of their decision to purchase and install Powerwall 2.

132. Tesla's deceptive and unfair practices were a direct and proximate cause of the injuries and damages suffered by Plaintiff and the Florida Subclass. Had Tesla truthfully disclosed the defect, overheating and fire risk,

remote-shutdown practices, and limitations of its Recall and warranty remedies, Plaintiff and Florida Subclass members would not have purchased Powerwall 2, or would have paid substantially less for it.

133.  As a direct and proximate result of Tesla's violations of FDUTPA, Plaintiff and Florida Subclass members suffered "actual damages" within the meaning of Fla. Stat. § 501.211(2), including, but not limited to:

a. **Overpayment and** price-premium **damages** – the difference between the value of Powerwall 2 as represented (safe, reliable, defect-free home energy storage and backup) and the value of Powerwall 2 as delivered (defective, subject to overheating and fire risk, recalled, and remotely discharged or disabled);

b. **Diminished value** of Powerwall 2 due to the latent defect, Recall, and remote-shutdown practices; and

c. **Loss of use** of Powerwall 2 during periods when Tesla instructed owners not to use the system and/or remotely discharged or disabled it, depriving Plaintiff and Florida Subclass members of the backup-power and energy-management functions for which they paid.

134.  Tesla's Recall and limited warranty remedies do not make Plaintiff and Florida Subclass members whole and do not negate or eliminate these FDUTPA damages. Tesla has not provided full restitution of the purchase price or price premium, has not compensated consumers for loss of use or incidental

and consequential harm associated with the Recall, and has not restored consumers to the position they would have occupied had the defect been disclosed and the product been as represented at the time of sale.

135.  Plaintiff and the Florida Subclass seek recovery of actual damages as defined under FDUTPA, Fla. Stat. § 501.211(2), together with prejudgment and post-judgment interest.

136.  Plaintiff and the Florida Subclass also seek declaratory and injunctive relief under FDUTPA, Fla. Stat. § 501.211(1), including an order:

a. Declaring that Tesla's conduct described herein violates FDUTPA;

b. Enjoining Tesla from continuing to engage in the deceptive and unfair acts and practices alleged herein in connection with Powerwall 2 and similar products; and

c. Requiring Tesla to implement truthful, non-misleading disclosures and fair, adequate recall and warranty practices that fully account for the economic harm caused by the defect and Recall.

137.  Pursuant to Fla. Stat. § 501.2105, Plaintiff and the Florida Subclass are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Class and Florida Subclass; and counsel for Plaintiff as Class and Subclass Counsel;

B.  For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C.  For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.  Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Class;

E.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.  For prejudgment interest on all amounts awarded;

G.  For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

H.  For injunctive relief as pleaded or as the Court may deem proper; and

I.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.  Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: November 26, 2025.           Respectfully Submitted,


/s/ _Antonio A. Cifuentes Jr._
Antonio A. Cifuentes Jr.
(FL Bar No. 1065049)
**POULIN | WILLEY |
ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email:
tony.cifuentes@poulinwilley.com
cmad@poulinwilley.com


_Attorney for Plaintiff &
Proposed Class_