**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ARTHUR BROWN,

        Plaintiff,

v.                              Case No.: 3:25-cv-1462-WWB-LLL

TESLA, INC.,

        Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Compel Arbitration (Doc. 13), Plaintiff's Opposition (Doc. 19), and Defendant's Reply (Doc. 24).[1]  For the reasons set forth below, Defendant's Motion will be granted in part.

## I.    BACKGROUND

Plaintiff Arthur Brown purchased a Powerwall 2 from Defendant Tesla, Inc. ("**Tesla**") to charge his Tesla vehicles, save on energy bills, and sell stored energy back to his power grid.  (Doc. 1, ¶¶ 42–43, 45).  The Powerwall was backed by an express Limited Warranty (Doc. 1-4), which included an agreement to arbitrate "any dispute arising out of or relating to any aspect of the relationship between [Brown and Tesla] . . . on an individual basis."  (*Id.* at 3).

---

[1] Plaintiff's Opposition fails to comply with this Court's January 13, 2021 Standing Order.  In the interests of justice, the Court will consider the filing because this matter is fully briefed and ripe for resolution on the merits, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.  The Court notes that its April 2, 2026 Standing Order was issued subsequent to the instant filings but applies prospectively to all filings in this action.

Brown alleges "that a significant population of Powerwall 2 systems contained [defective] lithium-ion battery cells" that could "overheat, stop functioning, emit smoke, or catch fire under normal operating conditions." (Doc. 1, ¶ 21). Tesla issued a recall on the affected units, including Brown's. (*Id.* ¶¶ 23, 29). Pursuant to the recall, Tesla will inspect and eventually replace affected Powerwalls. (*Id.* ¶ 27). But because the recall process has been "slow" and "burdensome," Tesla has, in the interim, remotely disengaged the affected Powerwalls on an intermittent basis to prevent overheating. (*Id.*; *see also id.* ¶¶ 26, 29, 46–48). Accordingly, Brown initiated a putative class action against Tesla on behalf of Powerwall purchasers across the United States and Florida, bringing claims for breach of express and implied warranties, unjust enrichment, and violations of the Florida Deceptive and Unfair Trade Practices Act. (*See generally id.*). Tesla moves to compel arbitration pursuant to the relevant clause in its Limited Warranty. (*See generally* Doc. 13).

## II.   LEGAL STANDARD

In general, the Federal Arbitration Act ("**FAA**"), 9 U.S.C. § 1 *et seq.*, governs the enforceability of arbitration provisions in contracts involving transactions in interstate commerce. *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a 'liberal federal policy favoring arbitration agreements.'" *Hill*, 398 F.3d at 1288 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, it is well-settled that

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  In determining whether to compel arbitration, courts do not weigh the merits of the parties' claims.  *AT & T Techs.*, 475 U.S. at 649.  Rather, courts must limit their review to three factors: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived."  *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007).  "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made."  *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quotation omitted).

## III.    DISCUSSION

Tesla argues that Brown entered into a valid arbitration agreement and that any further questions of arbitrability have been delegated to the arbitrator.  The Court agrees. "[S]tate law governs whether an enforceable contract or agreement to arbitrate exists." *Exceen v. Ramirez*, No. 8:24-cv-880, 2024 WL 3327509, at *2 (M.D. Fla. June 13, 2024) (quotation omitted).  And under Florida law "[o]ne cannot both take advantage of contract provisions to seek to impose liability on [a business] and at the same time avoid another

3

contract term or provision for which it has no use." *Giller v. Cafeteria of S. Beach Ltd.*, 967 So. 2d 240, 242 (Fla. 3d DCA 2007) (collecting cases). Here, Brown attempts to do just that. He does not dispute that he entered into an agreement with Tesla, that the agreement was governed by a Limited Warranty, or that the Limited Warranty contained an arbitration clause—in fact, Brown alleges all three points and seeks relief under the terms of the Limited Warranty. (Doc. 1, ¶¶ 17–20, 80–86). Thus, he cannot avoid the Limited Warranty's arbitration provision.

Brown's counterarguments are unpersuasive. Brown first argues that Tesla has failed to meet its burden to show that an agreement to arbitrate exists because the parties have submitted different versions of Tesla's Limited Warranty—Brown's submission being effective April 19, 2017, and Tesla's being effective April 13, 2021. (Doc. 1-4 at 2; Doc. 14-1 at 1). While the Complaint does not allege the exact date on which Plaintiff purchased a Firewall, both parties' submissions include an arbitration agreement. Brown's April 2017 Limited Warranty provides:

> **Agreement to Arbitrate.** Please read this provision carefully.
>
> In the event of a concern or dispute between us, please send Tesla written Notice to energyresolutions@tesla.com describing the nature of the dispute and the relief sought.
>
> If it is not resolved within 60 days, Tesla and you agree that any dispute arising out of or relating to any aspect of the relationship between us will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA). This includes claims arising before this Agreement, including claims related to statements about our products. Alternatively, you may opt out of arbitration as described below.
>
> The AAA Consumer Arbitration Rules will apply. We will pay all AAA fees for any arbitration. The arbitration will be held in a location most convenient to your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

The arbitrator may only resolve disputes between you and Tesla on an individual basis. The arbitrator cannot award relief for anyone who is not a party and may not consolidate claims. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any of this section's limitations cannot be enforced as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.

If you prefer, you may instead take your individual dispute to small claims court.

You may opt out within 30 days after accepting the terms of this Limited Warranty by sending a letter to P.O. Box 15430, Fremont, CA 94539-7970, stating your name and intent to opt out of the arbitration provision.

(Doc. 1-4 at 3). Tesla's April 2021 Limited Warranty provides substantially identical terms:

**Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates (together "Tesla").

If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to http://www.adr.org.

The arbitrator may only resolve disputes between you and Tesla and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla products. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as injunctive or declaratory relief), then that claim or remedy (and only

that claim or remedy) shall be severed and must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, product, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

(Doc. 14-1 at 2–3). Therefore, no version of facts presents a material dispute over the existence of an agreement to arbitrate. *Cf. Bazemore*, 827 F.3d at 1333 (stating that "a summary judgment-like standard is appropriate" for evaluating the formation of an arbitration agreement).

Perhaps anticipating this conclusion, Brown next disputes Tesla's ability to rely on his own allegations concerning the Limited Warranty, which necessarily establish that Brown entered into a valid agreement with Tesla. The Court sees no reason to discount Brown's allegations, as they constitute "conclusively binding" judicial admissions until the underlying pleading is amended or withdrawn. *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1191 (S.D. Fla. 2015) (quoting *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)). And, once again, Florida law "precludes a party from claiming the benefits of a contract (*i.e.,* suing to enforce a contractual provision) while simultaneously attempting to avoid the arbitration provision within the contract." *Johnson v. Westlake Portfolio Mgmt., LLC*, No. 8:20-cv-749-T, 2020 WL 5526386, at *2 (M.D. Fla. Sept. 15, 2020).

Further inquiries into the arbitrability of Brown's claims have been delegated to the arbitrator. "A court's analysis of an arbitration agreement turns on whether it contains a

6

delegation agreement, which 'commits questions of arbitrability to an arbitrator's review, including questions about the validity or enforceability of the parties' primary arbitration agreement.'" *KMF Servs., LLC v. Shift4 Payments, LLC*, No. 3:24-cv-633, 2025 WL 3669516, at *3 (M.D. Fla. Sept. 15, 2025) (quoting *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022)). "[W]here an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." *Id.* (quoting *Ford of Kendall, LLC v. Lemus*, No. 24-10831, 2024 WL 4449455, at *3 (11th Cir. Oct. 9, 2024)). Here, there is no dispute that both limited warranties establish that any arbitration will be conducted under the American Arbitration Association's Consumer Arbitration Rules, which delegate questions of arbitrability to the arbitrator. *Cf. Attix*, 35 F.4th at 1291 ("[B]y incorporating the AAA's rules for consumer arbitrations into their agreement, the parties had agreed to 'delegate' any disputes about the arbitrability of Attix's claims to an arbitrator."); *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 704 (Fla. 2022) (holding that parties "clearly and unmistakably agreed that an arbitrator decides questions of arbitrability" because "Airbnb's Terms of Service explicitly incorporate[d] by reference the AAA Rules").

Brown correctly notes that if the Court finds that issues of arbitrability have been delegated, it maintains jurisdiction to rule on challenges to the delegation agreement itself. *See KMF Servs.*, 2025 WL 3669516, at *3–4. But from there, Brown reiterates that Tesla has failed to show formation of a contract. As stated above, this argument is contrary to both Florida law and "federal policy favoring arbitration." *Exceen*, 2024 WL

3327509, at *2 (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)).

Lastly, Tesla moves for dismissal or a stay pending arbitration, arguing that the weight of authority supports dismissal. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). While Brown has not requested a stay under § 3 of the FAA, the Court nonetheless finds that a stay is more appropriate. *See Exceen*, 2024 WL 3327509, at *2 ("If a court compels arbitration, it should stay the arbitrable claims." (citing *Smith*, 601 U.S. at 474; *Klay v. All Defs.*, 389 F.3d 1191, 1203–04 (11th Cir. 2004))).

## IV.   CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration (Doc. 13) is **GRANTED in part** to the extent provided herein and **DENIED** in all other respects. The parties are directed to submit all claims to arbitration in accordance with the terms of their agreement.

2. Defendant's Motion to Dismiss (Doc. 15) is **DENIED as moot** and Defendant's Request for Oral Argument (Doc. 17) is **DENIED** as to the Motion to Compel Arbitration and **DENIED as moot** as to the Motion to Dismiss.

3. This case is **STAYED** pending arbitration. On or before **October 27, 2026**, and every 180 days thereafter, Defendant shall file a report as to the status of the arbitration proceeding. Additionally, Defendant shall notify this Court

8

within ten days of the final resolution of the arbitration proceeding or other resolution of this dispute.

4. The Clerk is directed to administratively close this case.

**DONE AND ORDERED** in Jacksonville, Florida on April 30, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

9